**FILED**
OCT 3 1 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | Magistrate No.: 07-517M |
| : | |
| : | VIOLATION: 18 U.S. C. § 641 |
| : | (Theft of Public Money (Misdemeanor)) |
| v.  : | |
| : | |
| PATRICIA BUCCELLO, : | |
| : | |
| Defendant. : | |

## STATEMENT OF THE OFFENSE

Pursuant to Fed. R. Crim. P. 11, the defendant, Patricia Buccello, under penalty of perjury, agrees and stipulates, to the following facts in connection with her plea of guilty as follows:

### Background

The National Park Service (NPS), located at 1849 C Street, N.W., Washington, D.C., is an agency of the United States Department of the Interior that is dedicated to the unimpaired preservation of the natural and cultural resources and values of the national park system, a network of nearly 400 natural, cultural and recreational sites across the United States. Since 1978, defendant, Patricia Buccello (hereinafter "defendant"), worked as a Park Ranger and Criminal Investigator for the NPS. Between February 2005, and March 2007, was employed as the National Special Agent in Charge (SAC) at the NPS. For the 16 months prior to February 2005, defendant had been the acting National SAC. As the National SAC, defendant's duties included managing all of the finance accounts for the NPS Special Agents including supervising regional SACs, who in turn were responsible for approximately 45 NPS Special Agents. In

addition to her duties as National SAC, defendant had maintained the title and position of the Medical Standards Program Manager for the NPS since 2002.

To fulfill her duties as the National SAC and Medical Standards Program Manager, defendant frequently traveled to various locations in the United States to attend conferences, meetings and trials. To pay for certain expenses incurred in the course of conducting official government business, the NPS provided defendant with a government credit card. The prevailing policies and established procedures at the NPS made it clear that the credit card was not to be used for personal expenses. When defendant traveled for government purposes, she was required to purchase airline tickets either through the government travel agency, Carlson Wagonlit, or directly from the airline using her government credit card. Because she was the National SAC, defendant had blanket travel authorization. This meant that the government would automatically pay for any airfare defendant charged to her government credit card without any prior approval. However, defendant was required to complete a voucher to obtain reimbursement for the allotted per diem and incidental expenses charged to her government credit card while conducting government business. Also, vouchers are submitted so the accounting office can accurately obligate funds.

In a memorandum dated July 6, 2004, Karen Taylor-Goodrich, defendant's supervisor at that time, notified defendant that the duty station in her present position as Medical Standards Program Manager was being changed from Bar Harbor, Maine, to Washington, D.C., effective October 1, 2004. This change in duty station made it clear that beginning October 1, 2004, the government would not be responsible for charges incurred by defendant when she traveled between Maine and Washington, D.C., for personal reasons. In response to Ms. Goodrich-

Taylor's memorandum, defendant signed an acceptance form dated July 23, 2004, thereby assenting to the change in her duty station from Bar Harbor, Maine to Washington, D.C. In February 2005, defendant became the National SAC for the NPS whose duty station was located in Washington, D.C.

### Failure to Perform Duties

On April 6, 2007, the United States Department of the Interior Office of the Inspector General (DOI-OIG) received a complaint from a Special Agent of the National Park Service alleging that defendant failed to perform her assigned duties in order to obtain a free round trip airline ticket. The subsequent investigation conducted by DOI-OIG revealed that on March 23, 2007, defendant was scheduled to attend a ceremony honoring fallen NPS officers in Jacksonville, Florida, as a representative for the Director of the NPS. On March 23, 2007, defendant flew from Washington, D.C., to Charlotte, North Carolina, where she was scheduled to take U.S. Airways flight 1137 connecting to Jacksonville, Florida. Instead, defendant voluntarily gave up her seat on flight 1137 in return for a free round trip airline ticket. When asked why she failed to attend the ceremony, defendant informed several individuals including, Special Agents who attended the ceremony, her supervisor and DOI-OIG investigators, that the flight had been cancelled after being stuck for hours on the tarmac in Charlotte. However, the investigation revealed that flight 1137 departed only 19 minutes late and arrived in Jacksonville 14 minutes late. In addition, representatives from US Airways explained that no one on flight 1137 was denied boarding and free round trip tickets were used merely to solicit volunteers to give up their seats. Defendant's failure to attend this meeting resulted in monetary losses to the government of $766.50.

Further investigation by DOI-OIG revealed that defendant failed to perform her assigned duties on a prior occasion involving a widow of one of the fallen officers who was honored at the March 23, 2007, ceremony held in Jacksonville, Florida. Defendant was scheduled to travel on July 10, 2006, from Rockland, Maine to St. Louis, Missouri to personally deliver the fatality report to the aforementioned widow of the fallen NPS officer. Defendant's itinerary included a connecting flight in Boston, Massachusetts. Defendant missed her scheduled flight out of Rockland and caught a later flight from Rockland to Boston. This resulted in her missing the connecting flight from Boston to Charlotte, North Carolina, and then her final connection to St. Louis. Defendant did not continue to St. Louis. Instead, she traveled from Boston to Washington, D.C. Defendant contacted the widow, who was expecting personal delivery of the fatality report, and stated that she was stuck on the tarmac and would not make it to St. Louis. Each of defendant's scheduled flights from Rockland, Maine to St. Louis, Missouri departed on time on July 10, 2006. Defendant's failure to travel to St. Louis to deliver the fatality report resulted in monetary losses to the government of $1,882.80.

As the National SAC, defendant had a duty to ensure that all of the finance accounts for NPS Special Agents, including her account, were managed without fraud, waste or abuse. The DOI-OIG investigation also revealed that defendant used her government credit card to purchase non-refundable airline tickets which have expired and no longer have any value. These tickets should have been used or exchanged by defendant. Defendant's failures resulted in losses to the government totaling $3,852.44.

### Fraudulently Billed Personal Travel

The investigation also revealed that from April 2005, through February 2007, defendant charged to the government all or a portion of the airfare associated with nine different personal trips between Washington, D.C., and Maine. For three of the trips, defendant used the government travel agency, Carlson Wagonlit to purchase the airline tickets. Defendant used her government credit card to pay all or a portion of the airfare associated with the remaining six trips. The blanket travel authorization granted to defendant due to her position as the National SAC enabled her to charge personal travel costs to her government credit card without the approval and knowledge of her supervisors. In addition, defendant had not submitted vouchers for the questioned airfare costs which further enabled defendant to charge personal travel costs to the government without the knowledge of her supervisors. The fraudulently billed airfare associated with the nine personal trips defendant took between Washington, D.C., and Maine cost the government $4,265.21.

As a result of all of defendant's conduct, the government suffered losses totaling $10,864.95.

Date: 10/31/2007

PATRICIA BUCCELLO
Defendant

I have read each of the pages constituting this statement of offense and reviewed and discussed them with my client.

Date: 10/31/07

MICHAEL SPEKTER, ESQUIRE
Attorney for the Defendant